IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TINESHA T. SHEFFIELD, individually and on behalf of minor child J.C.;<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF NEBRASKA, et al.,<br><br>Defendants. | **8:25CV688**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on initial review of the Complaint filed by Plaintiff Tinesha T. Sheffield ("Plaintiff") on behalf of herself and her minor child J.C. Filing No. 1. Also before the Court are Plaintiff's pending motions for a temporary restraining order. Filing No. 3; Filing No. 7. Plaintiff has been given leave to proceed in forma pauperis. Filing No. 6. For the reasons that follow, the Court will dismiss the Complaint for failure to state a claim for relief under 28 U.S.C. § 1915(e)(2) and will deny Plaintiff's motions as moot.

## I. SUMMARY OF COMPLAINT[1]

Plaintiff's Complaint consists of 55 type-written pages and over 200 pages of attachments. The Complaint itself is repetitive as Plaintiff restates her factual allegations, causes of action, and claims for relief multiple times, *compare* Filing No. 1 at 1–15, *with* *Id*. at 15–21, 21–34, 34–55, and some of those repetitions appear to be draft versions of Plaintiff's pleading, *see, e.g.*, *Id*. at 21 (e-mail forwarded by Plaintiff to herself with subject heading "Draft 2"). Plaintiff also has filed almost 200 additional pages of supplemental

[1] For purposes of conducting this initial review, the Court has considered the supplemental materials Plaintiff filed, Filing No. 9; Filing No. 10; Filing No. 11; Filing No. 12, along with the Complaint, Filing No. 1.

materials. Filing No. 9; Filing No. 10; Filing No. 11; Filing No. 12. Though confusing, the Court has done its best to construe Plaintiff's factual allegations and claims.

Plaintiff names the State of Nebraska, the Nebraska Department of Health and Human Services ("DHHS"), Douglas County Juvenile Probation ("Juvenile Probation"), Omaha Public Schools ("OPS"), the Omaha Police Department ("OPD"), a Blessing of Hope Family Services ("Blessing of Hope"), and CareMinders Home Care, Inc. ("CareMinders") as defendants in the caption of her Complaint, but lists a total of 40 defendants in the body of her Complaint, including a Douglas County Juvenile Court judge, a bailiff, and attorneys, staff members and officials of DHHS, Juvenile Probation, OPS, OPD, Blessing of Hope, and CareMinders, and foster placement individuals (collectively "Defendants"). Filing No. 1 at 3–4. Plaintiff sues Defendants pursuant to Title II of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12131 *et seq*., and Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794 *et seq*., as well as under 42 U.S.C. § 1983 for violations of procedural and substantive due process, equal protection, and denial of access to the courts related to juvenile court proceedings involving her minor child, J.C.

Plaintiff alleges she is a parent with disabilities and Defendants denied her ADA accommodations and meaningful participation regarding her child, J.C, throughout the course of his juvenile court proceedings and placement in DHHS temporary custody. Though not clearly alleged in the Complaint, a petition was filed on December 5, 2024, in the Separate Juvenile Court for Douglas County, Nebraska, in case number JV24-1594, alleging J.C. fell within the provisions of Neb. Rev. Stat. § 43-247(3)(a) because he lacked proper parental care by reason of the faults or habits of Plaintiff. Filing No. 9 at 17–18.

J.C. was placed in the temporary custody of DHHS and placed with various placement providers including Johnesha Bishop ("Bishop") and Brandi Simpson ("Simpson"), who also supervised another juvenile, T.D., at their residence. Plaintiff alleges Bishop, Simpson, and another placement provider, Raven Bass ("Bass"), supervised J.C. during documented harm and that DHHS approved those homes without adequate investigation. The incidents of harm include J.C. suffering "manual neck compression" by Bishop and Simpson on June 20, 2025, as documented in Police Report AU-68664 with photos, Filing No. 1 at 5, a June 22, 2025, assault and robbery documented in Police Report AU-68663 involving a $1,000 phone and injuries, and another alleged placement-related assault documented in Police Report AU-93921, involving ongoing threats to J.C. at school. Plaintiff alleges DHHS approved the Bishop-Simpson home despite no running water reported in Hotline #1128970 and ignored Hotline #1132675 reporting an assault at the Bass placement. Plaintiff further states Police Report AU-05538 documented J.C. leaving the Child Saving Institute and staying at the Bishop-Simpson home in September 2024,[2] and DHHS failed to investigate Plaintiff's earlier harboring concerns related to that event before approving that home. She alleges none of these incidents were entered into safety plans, "MDT reviews," OPS records, or court filings. *Id*. at 2. Plaintiff further alleges DHHS issued a safety plan dated September 4, 2025, with an incorrect end date of September 3, 2025, and failed to conduct required weekly check-ins or include police and hotline reports, as confirmed in a November 18, 2025, DHHS message. J.C.'s physical placement was returned to Plaintiff's home in September 2025. Filing No. 12 at 2.

---

[2] While Plaintiff alleges that this event took place in July 2025, Filing No. 1 at 5, the police report she references shows the event occurred in September 2024, *Id*. at 81.

Plaintiff alleges Juvenile Probation supervised both J.C. and T.D. during the June 2025 incidents and failed to disclose this dual-supervision conflict, file safety alerts, request placement changes, or investigate conditions.

Plaintiff alleges OPS School Resource Officer personnel opened and canceled January 2024 missing-person reports AT-58900, AT-39165, P4360428, and P4364676 without parental notice, distorting the safety history later relied upon by DHHS. She further states OPD documented an August 2024 missing-child incident stating J.C. was "seen downtown with friends" when the eyewitness was J.C.'s brother and the youth involved was T.D., and this incident was not accurately transmitted to DHHS or the juvenile court. Filing No. 1 at 5.

Ashley Strader, the guardian ad litem ("GAL") for J.C., also received police and hotline reports and DHHS communications but did not request hearings or correct records, and DHHS staff failed to revise the safety plan or notify the juvenile court of these reports. Contracted service provider Blessing of Hope and its personnel, Angel Todd, Paul Manestar, and Kali Cuendet, submitted discrepant service reports relied on by DHHS and the GAL, and OPS administrators failed to implement Section 504 accommodations or respond to requests. Plaintiff alleges CareMinders personnel Doreen Green, Mariah (last name unknown), and Kashay or "Quiyata" Washington provided inconsistent supervision for another child and their documentation was misused by DHHS to assess parenting ability without adherence to Medicaid or agency standards.

With respect to the juvenile court proceedings, Plaintiff alleges more than twelve of her motions, including ADA and safety-correction motions, were never scheduled, though it is unclear if her court-appointed counsel failed to schedule these motions or if

Defendant Cheyenne J. Wilson ("Wilson"), the juvenile court bailiff in control of scheduling hearings, declined to do so. Plaintiff also alleges the juvenile court clerk failed to process one of Plaintiff's filings properly where the filing's stamp sequence was reversed mid-processing, which the clerk acknowledged.

Justin T. Wayne ("Wayne") was appointed to represent Plaintiff in July 2025 in JV24-1594. Plaintiff alleges she received no written notice of an October 20, 2025, hearing, but rather only received a text at 11:32 p.m. on October 19 from Wayne. Plaintiff was not provided ADA accommodations at the October 20 hearing, and the order addressing the October 20 hearing was file-stamped on November 18, 2025, *see Id*. at 165–67. On October 30, 2025, Wayne withdrew both his protective appeal and Plaintiff's pro se appeal without authorization, removing "the only avenue to challenge the October 20 hearing." *Id*. at 6.

However, a review of the state court records in JV24-1594[3] show that the appeal Plaintiff refers to was an appeal of the juvenile court's July 16, 2025, adjudication order, and, on October 30, 2025, the Nebraska Court of Appeals granted Wayne's motion to dismiss the appeal, which he filed on October 17, 2025, prior to the October 20, 2025, hearing. Plaintiff attached to her Complaint a copy of the November 18, 2025, order regarding the October 20 "continued disposition and appeal check hearing," which indicates Plaintiff was present for the hearing, Wayne advised the Court that they had withdrawn Plaintiff's appeal, and "the parties ask[ed] the Court to proceed and enter these

---

[3] This Court has been afforded access to the computerized record keeping system for the Nebraska state courts. The Court takes judicial notice of the state court records related to this case in *In the Interest of J.S. AKA J.C.*, Case No. JV24-1594, Separate Juvenile Court for Douglas County, Nebraska. *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (court may take judicial notice of judicial opinions and public records). Nebraska's judicial records may be retrieved on-line through the JUSTICE site, https://www.nebraska.gov/justice/case.cgi. Relevant records are attached to this order.

orders once the mittimus is received from the appellate Courts acknowledging a dismissal." *Id*. at 165. Thus, it appears the juvenile court's delay in entering the order on the October 20 hearing was done at the parties' request. However, on December 9, 2025, the juvenile court vacated the November 18, 2025, order on the October 20 hearing, as the matter had still been on appeal and the mandate was not issued until December 5, 2025, and entered a new disposition order essentially mirroring the November 18, 2025, order with J.C. remaining in DHHS' temporary custody for continued care and placement to include Plaintiff's home. *Compare Id*. at 165–67, *with* attached "Order Vacating the Court's October 20, 2025 Order" filed Dec. 9, 2025, in JV24-1594. Wayne was permitted to withdraw as counsel for Plaintiff on January 22, 2026, and Plaintiff was appointed new counsel. On March 6, 2026, the juvenile court entered an order returning custody of J.C. to Plaintiff and terminating the court's jurisdiction and DHHS' responsibility in the matter. See attached "Termination of Jurisdiction Order" filed Mar. 6, 2026, in JV24-1594.

Plaintiff asserts the failures described in the Complaint "collectively produced continuing harm, inaccurate records, withheld notices, lost appellate rights, discrimination under the ADA and Section 504, procedural due-process violations, substantive due-process violations, denial of access to the courts, and state-created danger," and "[t]he harm remains ongoing." Filing No. 1 at 6. As relief, Plaintiff seeks injunctive relief in the form of:

- correction of all Defendants' records to include all police and hotline reports identified in the Complaint;
- suspension of reliance on any incomplete or inaccurate records in the juvenile case;

- disclosure of the complete juvenile case file;
- "enforcement of ADA and Section 504 communication accommodations, including written notices, timely responses, and accessible communication";
- prohibition against holding hearings without direct written notice to Plaintiff;
- reinstatement of Plaintiff's appeal rights or clarification of why the appeals were withdrawn without consent; and
- an immediate bar against placement of J.C. in any home connected to the police and hotline reports described in the Complaint.

*Id*. at 10. In addition, Plaintiff seeks $35,750,000.00 in compensatory, consequential, statutory, and punitive damages for the "emotional, physical, procedural, educational, and constitutional harm to both Plaintiffs." *Id*. at 12.

## II. STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be

dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also* *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## III. ANALYSIS OF CLAIMS

### A. Claims on J.C.'s Behalf

According to the Complaint's caption, Plaintiff brings this action individually and on behalf of J.C., her minor child. Plaintiff is proceeding pro se, and, as a pro se litigant, she may not represent the interests of other parties, including her son, J.C. *Litschewski v. Dooley*, No. 11-4105-RAL, 2012 WL 3023249, at *1 n. 1 (D.S.D. July 24, 2012), *aff'd*, 502 Fed.Appx. 630 (8th Cir. 2013). Indeed, "[n]on-attorney parents cannot litigate *pro se* on behalf of their minor children, even if the minors cannot then bring the claim themselves." *Crozier for A.C. v. Westside Community School District*, 973 F.3d 882, 887 (8th Cir. 2020). "While this rule 'may not be ironclad,' there is no exception for lawsuits based on 42 U.S.C. § 1983 or general state tort law." *C.H. by & through Hunt v. Pattonville Sch. Dist.*, No.

4:21-CV-00443-JCH, 2021 WL 4061106, at *2 (E.D. Mo. Sept. 7, 2021) (quoting *Crozier for A.C.*, *supra*). Accordingly, the Court will dismiss any claims brought on J.C.'s behalf without prejudice.

**B. Injunctive Relief**

Essentially, Plaintiff seeks injunctive relief (1) correcting or modifying the information provided to, used, and/or relied upon by the juvenile court and DHHS in making decisions with respect to the custody and placement of J.C., (2) providing Plaintiff with accommodations and restoration of her appellate rights in the juvenile court proceedings, and (3) barring certain placements of J.C. Assuming, without deciding, that the Court may exercise federal subject matter jurisdiction over Plaintiff's claims for injunctive relief,[4] the Court concludes the juvenile court's termination of its jurisdiction and DHHS' involvement in J.C.'s custody and placement renders Plaintiff's claims moot.

"In general, a pending claim for injunctive relief becomes moot when the challenged conduct ceases and there is no reasonable expectation that the wrong will be repeated." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1024 (8th Cir. 2012) (quoting *Roubideaux v. N.D. Dep't of Corr. & Rehab.*, 570 F.3d 966, 976 (8th Cir.2009)). Also, "[a] request for injunctive relief is moot if the injunctive relief sought would no longer have any meaning for the party seeking it." *Turning Point USA at Arkansas State Univ. v. Rhodes*, 409 F. Supp. 3d 677, 684 (E.D. Ark. 2019) (citing *Forbes v. Ark. Educ. Television Comm. Network Found.*, 982 F.2d 289, 289 (8th Cir. 1992) (per curiam); *McFarlin v. Newport*

[4] *See Kahn v. Kahn*, 21 F.3d 859, 861 (8th Cir. 1994) (federal courts lack jurisdiction over any action for which the subject is child custody and may also abstain from exercising jurisdiction over cause of action related to child custody action).

*Special Sch. Dist.*, 980 F.2d 1208, 1210 (8th Cir. 1992)), *aff'd*, 973 F.3d 868 (8th Cir. 2020).

Here, because the juvenile court proceedings have been finally terminated, the Court cannot grant Plaintiff the relief she seeks with respect to those proceedings. Accordingly, Plaintiff's claims for injunctive relief will be dismissed as moot, and the Court will deny her pending motions for temporary restraining orders as moot also. Because Plaintiff also seeks damages as relief, the Court has reviewed Plaintiff's remaining claims to determine if she has alleged any plausible claims for relief and, for the reasons that follow, finds that she has not.

**C. ADA and RA Claims**

Liberally construed, Plaintiff alleges Defendants discriminated against her based on her disabilities in violation of Title II of the ADA and Section 504 of the RA. Individuals may not be sued under Section 504 of the RA or under Title II of the ADA. *Dinkins v. Corr. Med. Servs.*, 743 F.3d 633, 634 (8th Cir. 2014); 42 U.S.C. § 12132 (Title II provides disabled individuals redress for discrimination by a "public entity"); 42 U.S.C. § 12131(1) ("public entity" does not include individuals). Thus, to the extent Plaintiff asserts her ADA and RA claims against any of the individual defendants in their individual capacities, such claims must be dismissed, and the Court construes Plaintiff's claims as being brought against the State of Nebraska, DHHS, Juvenile Probation, OPS, OPD, Blessing of Hope, and CareMinders.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by

any such entity." 42 U.S.C. § 12132. Section 504 of the RA similarly provides that "[n]o otherwise qualified individual with a disability . . . shall . . . be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The ADA defines "public entity" to include "any State or local government" and "any department, agency, . . . or other instrumentality of a State," 42 U.S.C. § 12131(1). Under the RA, "program or activity" is defined to include "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government" and "an entire corporation, partnership, or other private organization, or an entire sole proprietorship" receiving assistance or "which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation." 29 U.S.C. § 794(b).

To state a claim under either the ADA or the RA, a plaintiff must show "[she] is a qualified individual with a disability denied participation in, or the benefits of, the services, programs, or activities of a public entity because of [her] disability." *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998). The enforcement, remedies, and rights are the same under both Title II of the ADA and § 504, although the RA contains the additional requirement that the plaintiff show the program or activity from which she is excluded receives federal financial assistance. *See Id*. at 911–12. Given the similarities between the ADA and § 504, "cases interpreting either are applicable and interchangeable." *Id*. at 912 (internal quotation omitted).

The term "qualified individual with a disability" in the ADA means "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices,

the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). A "disability" is "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). "Major life activities" include such things as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Similarly, an "individual with a disability" under the RA means any person who has a disability as defined under the ADA. *See* 29 U.S.C. § 794(a); 29 U.S.C. § 705(20)(B) (citing 42 U.S.C. § 12102).

Here, Plaintiff alleges she "is a qualified individual with a disability under the ADA and Section 504," Filing No. 1 at 4, and, elsewhere in her supplemental materials, she avers her disabilities include "Post-Traumatic Stress Disorder (PTSD), Bipolar Disorder, and Cognitive Memory Impairment," Filing No. 10 at 41. Liberally construed, Plaintiff alleges she has been discriminated against in violation of the ADA and RA because she has not been provided direct written notices, timely responses, and accessible communication in the juvenile court and state administrative proceedings. Specifically, Plaintiff alleges Defendant Wilson, the juvenile court bailiff, did not provide Plaintiff direct notices when she requested and did not set hearings on Plaintiff's motions, but rather only set hearings when initiated by the State or counsel. Plaintiff further alleges she received no written notice of the October 20, 2025, hearing, but rather only received a

text the night before from her then-appointed counsel, Wayne, and she "did not receive ADA accommodations at the hearing." Filing No. 1 at 6.

While Plaintiff alleges she is a qualified individual with a disability, she fails to allege with sufficient specificity the services or programs she was denied, what specific accommodations she requested to access those services or programs, and how she was injured by the denial of her requested accommodations, particularly in light of the fact that she was represented by court-appointed counsel at all relevant times in the juvenile court. Plaintiff's allegations also fail to sufficiently connect any alleged harm with the conduct of any specific Defendant. As pleaded, Plaintiff's vague, conclusory allegations amount to no "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and are insufficient to state a plausible claim for relief under either the ADA or the RA. *Iqbal*, 556 U.S. at 678.

**D. Section 1983 Claims**

Liberally construed, Plaintiff also alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). Upon review, Plaintiff's Complaint fails to state a plausible § 1983 claim against any of the Defendants.

**1. Lack of Involvement**

Plaintiff names Jordan Klein, an attorney in the Juvenile Division of the Douglas County Attorney's Office, Juvenile Probation Officer Monessa Allerheiligen, Juvenile

Probation Supervisor Mary Visek, Nathan Hale Middle School Staff Member Alysha Station, and CareMinders CEO and Management Brian L. Schleicher and Margie Gleason as defendants, but she makes no allegations against any of these defendants in the body of the Complaint. "To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *Kingsley v. Lawrence Cnty.*, 964 F.3d 690, 700 (8th Cir. 2020) (quoting *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017)). A plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. *Iqbal*, 556 U.S. 662, 676 (2009).

Here, Plaintiff does not allege any facts showing Klein, Allerheiligen, Visek, Station, Schleicher, and Gleason were personally involved in any alleged misconduct. A complaint that only lists a defendant's name in the caption without alleging that the defendant was involved in the alleged misconduct fails to state a claim against that defendant. *Krych v. Hvass*, 83 Fed.Appx. 854, 855 (8th Cir. 2003); *see also* *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints"). Other than their names appearing in the list of defendants, the Complaint makes no reference to any of these six defendants, nor does it allege any constitutional wrongdoing by these defendants. The Complaint, thus, fails to state a claim for relief against Klein,[5] Allerheiligen, Visek, Station, Schleicher, and Gleason.

[5] To the extent Plaintiff seeks relief against Klein for her role as the prosecutor in the juvenile court proceedings, Plaintiff's claims against Klein also would be subject to dismissal as Klein is entitled to

**2. Unknown Defendants**

Plaintiff also names as defendants "[a]ny unknown DHHS, OPS, Probation, OPD, or contractor personnel whose actions contributed to the violations described in this Complaint." Filing No. 1 at 4. "'[A]n action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery.'" *Perez v. Does 1-10*, 931 F.3d 641, 646 (8th Cir. 2019) (quoting *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)). The allegations in Plaintiff's Complaint regarding these unknown, unnamed Defendants are not sufficiently specific to satisfy the exception to the general prohibition against fictitious parties. *See id*. The Complaint "does not sufficiently allege who [these] Defendants are, what they allegedly did, what their position is for [their respective employers], or any other facts that would permit [them] to be noticed or identified through discovery." *Id*. As such, Plaintiff's claims cannot proceed against the unknown Defendants as pleaded.

**3. State, DHHS, Juvenile Probation, and Juvenile Court Judge**

Plaintiff sues the State of Nebraska, DHHS, Juvenile Probation, and Douglas County Juvenile Court Judge Chad M. Brown in his official capacity only, but her claims are barred by sovereign immunity. The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities and an employee of a state sued in the employee's official capacity. *See, e.g.*, *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d

absolute immunity. *See Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006) ("Prosecutors are entitled to absolute immunity from civil liability under § 1983 when they are engaged in prosecutorial functions that are 'intimately associated with the judicial process.'") (quoting *Anderson v. Larson*, 327 F.3d 762, 768 (8th Cir. 2003)); *Martin v. Aubuchon*, 623 F.2d 1282, 1285 (8th Cir. 1980) (finding that absolute immunity applied to protect a prosecutor who had initiated the termination of parental rights without adequate notice to the parents).

615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446–47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g.*, *Dover Elevator Co.*, 64 F.3d at 444; *Nevels v. Hanlon*, 656 F.2d 372, 377–78 (8th Cir. 1981). There is no indication that Nebraska waived or Congress overrode immunity here. In any case, states or governmental entities that are considered arms of the state are not suable "persons" within the meaning of 42 U.S.C. § 1983, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989), and Plaintiff's § 1983 claims cannot proceed against the State, DHHS, and Juvenile Probation.[6] *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (Eleventh Amendment bars suit against state agency for any kind of relief); *Nix v. Norman*, 879 F.2d 429, 431–32 (8th Cir.1989) (suit brought solely against state or state agency is proscribed by Eleventh Amendment).

As a state court judge, Judge Brown is also entitled to sovereign immunity because Plaintiff's official-capacity claims against Judge Brown are claims against the State of Nebraska. *See El v. Daniels*, No. 8:22CV203, 2023 WL 3004577, at *4 (D. Neb. Apr. 19, 2023) (official-capacity claims against state court judge are claims against state); *McKinnies v. McCulley*, No. 4:23-CV-0080 RLW, 2023 WL 1765201, at *4 (E.D. Mo. Feb. 3, 2023) (same). Additionally, any attempt by Plaintiff to sue Judge Brown in his individual capacity would be futile as Judge Brown is entitled to absolute immunity for his actions taken in his judicial capacity in the juvenile court proceedings and nothing in the Complaint

[6] Though Plaintiff names "Douglas County Juvenile Probation" as a defendant, the Juvenile Probation Services Division of the District 4A Probation Office, encompassing Omaha and Douglas County, actually falls under the Nebraska state judicial branch of government and is, therefore, a state governmental entity. *See* Neb. Rev. Stat. § 29-2249; https://nebraskajudicial.gov/nebraska-probation-system.

or the state court records suggests Judge Brown acted without jurisdiction. *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). Thus, Plaintiff's § 1983 claims against Judge Brown must be dismissed.

**4. Juvenile Court Bailiff**

Plaintiff seeks damages against Wilson, a courtroom bailiff with the Douglas County Juvenile Court, for denying Plaintiff's requests for direct notices, as opposed to receiving notices through her appointed attorney, and for failing to set hearings on motions Plaintiff apparently filed either with the clerk or the juvenile court judge directly. As an initial matter, Plaintiff's claims against Wilson in her official capacity as a state court employee are barred by sovereign immunity for the reasons explained above. Liberally construed, Plaintiff sues Wilson in her individual capacity for denying her right of access to the courts.

"The right of access to the courts is well-established. The right applies not only to the actual denial of access to the courts, but also to situations in which the plaintiff has been denied meaningful access by some impediment put up by the defendant." *Scheeler v. City of St. Cloud*, 402 F.3d 826, 830 (8th Cir. 2005) (internal citation omitted).

> Although the existence of this right is clear, "the constitutional basis for the right is 'unsettled.'" *Id*. (quoting *Christopher v. Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002)). The Eighth Circuit has said that the right derives both from the First Amendment and from the Due Process Clause. *Id*. at 830–31. To successfully pursue a First Amendment claim, a plaintiff must show that the defendant acted with some intentional motivation to restrict her access to the courts. *Id*. at 830. To successfully pursue a due-process claim, a plaintiff must show that the defendant acted with deliberate indifference to her right to access the courts. *Id*. at 831.

*Gearin v. City of Maplewood*, 780 F. Supp. 2d 843, 862 (D. Minn. 2011).

Whether analyzed as a First Amendment or due process claim, Plaintiff has not, and cannot, allege facts to show that Wilson denied her right of access to the courts. First, Wilson was not required to provide Plaintiff with direct notices since Plaintiff was represented by counsel. The Douglas County Juvenile Court's local rules provide that notices of hearing are provided only to counsel, where counsel has entered an appearance, and to self-represented litigants who do not have counsel. *See* Rule 8.1.a. of the Rules of the Separate Juvenile Court for Douglas County, Nebraska. Plaintiff also cannot show that Wilson was intentionally motivated to restrict her access to the courts or that Wilson was deliberately indifferent to Plaintiff's right to access the courts by not scheduling Plaintiff's pro se motions for hearing. As set forth in the juvenile court's local rules, "[p]rior to scheduling the motion, the attorney for the party seeking the hearing shall consult the Court's bailiff to obtain a hearing date and time for the motion." Rule 4.1.c. of the Rules of the Separate Juvenile Court for Douglas County, Nebraska. Plaintiff does not allege that she ever contacted Wilson to schedule hearings on her pro se motions, nor does she allege that her counsel contacted Wilson to schedule any such hearings. Also, because Plaintiff was represented by counsel, Wilson's failure to schedule hearings on Plaintiff's pro se motions does not suggest that Wilson's actions were "designed to prevent access to the courts." *Morris v. City of Chillicothe*, 512 F.3d 1013, 1020 (8th Cir. 2008). Accordingly, the Court will dismiss Plaintiff's claims against Wilson.

**5. Guardian Ad Litem**

Plaintiff names Ashley Strader, the GAL for J.C., as a defendant, alleging she "received all police reports, hotline reports, and DHHS communications but did not request hearings, correct inaccuracies, or integrate new safety information into court

filings." Filing No. 1 at 6. However, Strader is absolutely immune from liability for actions taken in the course of the juvenile court proceedings in her role as GAL. *Dornheim v. Sholes*, 430 F.3d 919, 925 (8th Cir. 2005) (citing *McCuen v. Polk County, Ia.*, 893 F.2d 172, 174 (8th Cir.1990) (holding that a guardian ad litem's absolute immunity extends to her duties of preparing reports and making recommendations to family court)). Plaintiff's claims against Strader must, therefore, be dismissed.

**6. Plaintiff's Appointed Counsel**

Plaintiff also sues her former court-appointed counsel, Wayne, under § 1983 for his alleged failure to schedule several motions Plaintiff filed, his failure to provide her timely notice of the October 20, 2025, hearing, and his withdrawal of his protective appeal and Plaintiff's pro se appeal without authorization. As stated above, 42 U.S.C. § 1983 specifically provides a cause of action against a person who, under color of state law, violates another's federal rights. *West*, 487 U.S. at 48. "[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981). Similarly, attorneys appointed to represent parents in a juvenile court abuse and neglect proceeding are also not acting under color of state law. *Bruce v. Polk Cnty. Attorney's Off.*, No. 418CV00040, 2018 WL 10075604, at *11 (S.D. Iowa Sept. 21, 2018), *aff'd*, 772 F. App'x 409 (8th Cir. 2019) (citing *Bell v. Jackson*, No. C10–0376, 2011 WL 6968322, at *5 (W.D. Wash. Nov. 1, 2011) (citing *Dodson*, 454 U.S. at 325) (holding appointed defense counsel in dependency hearing not state actor because "public defenders acting in their role as advocates are not considered state actors for purposes of bringing suit under §

1983”)). As Wayne was not acting under color of state law, he cannot be held liable under § 1983 and must be dismissed from this action.

**7. Placement Providers and Other Private Individuals**

Plaintiff also seeks to hold Bishop, Simpson, and Bass, as DHHS placement providers for J.C., and T.D., as a juvenile resident of one of those placements, liable under § 1983. Plaintiff alleges Bishop, Simpson, and Bass “supervised [J.C.] during documented harm,” Filing No. 1 at 6, and T.D. assaulted J.C. while they were in the same placement, Filing No. 1 at 5. Plaintiff, however, fails to allege facts showing that any of these private individuals’ alleged misconduct can be fairly attributed to the state such that their actions constitute state action under § 1983. Bishop’s, Simpson’s, and Bass’ mere act of supervising J.C. pursuant to their role as a DHHS placement provider, without more, does not constitute state action. *Anderson v. Nebraska*, No. 4:17-CV-3073, 2018 WL 3009115 (D. Neb. June 15, 2018) (recognizing that “courts have consistently held that the decisions of foster parents are not state action” and concluding plaintiff failed to allege sufficient facts to plausibly suggest that child care decisions made by foster parents were attributable to the state). Thus, Plaintiff’s § 1983 claims against Bishop, Simpson, Bass, and T.D. fail as pleaded.

**8. DHHS Individual Defendants**

Plaintiff sues seven DHHS employees in their official and individual capacities—Katherine Shipley, Breanna Waugh, Brittani Long, Angela Morehead, Adora Mukuna, Jake Fields, and LaShawn Grant—who are described as DHHS caseworkers, supervisors, and staff members (collectively “DHHS Defendants”). Plaintiff alleges the DHHS Defendants “received police and hotline records but did not revise the safety plan

or notify the Court," Filing No. 1 at 6, which interfered with Plaintiff's right to the care, custody, and control of her child, *Id*. at 7. Even liberally construed, Plaintiff's claims cannot proceed against the DHHS Defendants as pleaded.

First, as explained above, Plaintiff's claims against the DHHS Defendants in their official capacities are claims against the State and are barred by sovereign immunity.

Liberally construed, Plaintiff claims that the DHHS Defendants, in their individual capacities, violated her substantive due process right to the care and custody of her child by failing to revise J.C.'s safety plan or notify the juvenile court regarding police and hotline records they received and that were relevant to the State's temporary custody and out-of-home placements of J.C. Plaintiff's substantive due process right, however, is limited by the state's "potentially conflicting, compelling interest in the safety and welfare of the children . . . particularly in circumstances where the protection is considered necessary as against the parents themselves." *Abdouch v. Burger*, 426 F.3d 982, 987 (8th Cir. 2005) (internal quotations and citations omitted). In supporting a child's welfare, social workers and other child services workers have been held to be absolutely immune from liability when filing or initiating proceedings to protect abused or neglected children as their role is "functionally comparable to that of a prosecutor." *Thompson v. SCAN Volunteer Servs., Inc.*, 85 F.3d 1365, 1373 (8th Cir. 1996). Such workers are also entitled to absolute immunity when acting as a witness in providing information to a juvenile court upon which the court acted. *Id*. Additionally, individual government actors performing discretionary tasks are entitled to qualified immunity which "protects public officials unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Abdouch*, 426 F.3d at 987. In the context of

abuse or neglect proceedings, qualified immunity may not apply where "credible evidence" supports claims that a caseworker fabricated or otherwise utilized perjured testimony in a family court proceeding. *Walker v. City of New York*, 63 F. Supp. 3d 301, 313 (E.D.N.Y. 2014), *aff'd*, 621 F. App'x 74 (2d Cir. 2015). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Wit v. City of Lincoln, Nebraska*, No. 4:19CV3006, 2019 WL 1459054, at *3 (D. Neb. Apr. 2, 2019) (citing *Iqbal*, 556 U.S. at 678).

Here, Plaintiff appears to allege the DHHS Defendants received the police and hotline records regarding Bishop and Simpson choking J.C. on June 20, 2025, the June 22, 2025, assault and robbery of J.C. by multiple parties, threats against J.C. at school, *see* Filing No. 1 at 5, 99–103, and the hotline reports of no running water at the Bishop-Simpson home and an unspecified assault at the Bass placement. With respect to the choking incident, the state court records refute Plaintiff's claim that the DHHS Defendants either ignored or did not notify the Court about this information. DHHS sought an emergency change of placement on June 25, 2025, which the juvenile court approved the same day, changing J.C.'s placement from the Bishop-Simpson home to the Bass placement based on DHHS Defendant Shipley's affidavit documenting the reason for the placement change as J.C.'s mistreatment by his foster parent. *See* attached "Ex Parte Motion for an Emergency Change of Placement" and "Order for an Emergency Change of Placement" filed June 25, 2025, in JV24-1594. Regarding the other reports, even if the DHHS Defendants did not incorporate this information into J.C.'s safety plan or notify the juvenile court of this information, Plaintiff has not alleged any facts showing how their failure to do so interfered with her parental rights. Much of the information in the police

and hotline records has no connection to J.C.'s placements apart from occurring while he was in an out-of-home placement, and, without any specific facts about when the Bishop-Simpson home lacked water or when the assault at the Bass placement occurred and who was involved, Plaintiff has not shown how the omission of such information violated her right to the care and custody of her child.

In sum, Plaintiff's scant allegations, her supplemental materials, and the state court records fail to present "an example of the sort of 'extreme misstatement' [or omission] necessary 'to override . . . the freedom of action that qualified immunity accords caseworker defendants.'" *Walker*, 63 F. Supp. 3d at 314 (quoting *Cornejo v. Bell*, 592 F.3d 121, 129 (2d Cir. 2010) (finding that failure on the part of caseworker to provide exculpatory information regarding one parent's absence during the time of the alleged abusive incident to family court did not prevent qualified immunity)). As such, Plaintiff's Complaint fails to state a claim for relief against the DHHS Defendants.

**9. DHHS Contractors**

Plaintiff sues Blessing of Hope and CareMinders, both of which appear to be contractors with DHHS that provide family and caregiving services, and several members of their staff. *See* Filing No. 1 at 3–4, 15. Plaintiff's allegations against these two defendants and their associated staff members consist entirely of the following: Blessing of Hope personnel Angel Todd, Paul Manestar, and Kali Cuendet "documented material discrepancies in service reports," which "were transmitted to DHHS and relied on by the GAL without correction," and CareMinders personnel Doreen "Susie" Green, Mariah (last name uknown), and Kashay a/k/a "Quiyata" Washington "provided inconsistent supervision for another child, and their documentation was used inappropriately by DHHS

to assess parenting ability without adherence to Medicaid or agency standards." *Id*. at 6. Even given a liberal construction, Plaintiff's allegations against these defendants are too vague and conclusory to state a plausible claim for relief. Absent facts about what material discrepancies or inappropriate documentation was provided to and used by DHHS and what connection such information had with Plaintiff, Plaintiff's Complaint fails to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and cannot proceed.

**10. OPS and OPS Employees**

Plaintiff also sues OPS, OPS Talent Services in its official capacity, and OPS Administrator Michaela Daly ("Daly") and staff member Kara Saldierna ("Saldierna") in their official and individual capacities (collectively "OPS Defendants"). Plaintiff alleges OPS failed to enter hotline and police reports regarding conditions of, or harm occurring in, J.C.'s out-of-home placements into their records and OPS School Resource Officer personnel opened and canceled January 2024 missing-child reports without parental notice and contrary to required reporting procedures, which distorted DHHS' later child-safety assessment. Filing No. 1 at 5. OPS Talent Services allegedly "did not respond to requests," and "[n]otices, MDT updates, and safety disclosures were withheld or delayed." *Id*. at 6. As for Daly and Saldierna, Plaintiff simply alleges they "failed to implement needed 504 accommodations." *Id*. Plaintiff's allegations are insufficient to state plausible claims for relief against the OPS Defendants.

OPS is a political subdivision of the state of Nebraska, *see* Neb. Rev. Stat. § 13-903(1), and, thus, OPS, OPS Talent Services, and Daly and Saldierna in their official

capacities may be liable under section 1983 only when either its "policy" or "custom" caused a violation of Plaintiff's constitutional rights, or a "policymaker" directly caused the rights violation. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Doe By and Through Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978)). An "official policy" involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy. *Jane Doe A By and Through Jane Doe B v. Special School Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir.1990) (citing *Pembaur*, 475 U.S. at 483). To establish the existence of a governmental custom, a plaintiff must prove:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Jane Doe*, 901 F.2d at 646.

Here, Plaintiff does not allege any facts to suggest an official policy or custom of the OPS Defendants violated her constitutional rights. "At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (quoting *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)).

Nor does Plaintiff allege sufficient facts to state a plausible claim for relief against Daly and Saldierna in their individual capacities. Plaintiff's conclusory allegation that

these defendants failed to implement necessary 504 accommodations lacks any factual context linking the defendants' conduct to a constitutional harm inflicted upon Plaintiff. Moreover, to the extent Plaintiff may be claiming Daly and Saldierna violated section 504 of the RA, these individual defendants may not be sued under Section 504 of the RA as explained above. *See* Section III.C., *supra*. Thus, Plaintiff's Complaint cannot proceed against any of the OPS Defendants as pleaded.

**11. OPD and OPD Officers**

Finally, Plaintiff sues OPD and the OPD Officers involved in Police Reports AU-05538, AU-68663, and AU-68664 alleging simply that OPD and the Officers documented these incidents involving J.C. and some of the information was not accurately transmitted to DHHS or the juvenile court. Plaintiff's allegations fall far short of stating a plausible § 1983 claim against OPD and its Officers.

As an initial matter, Plaintiff's § 1983 claims cannot proceed against OPD because "it is well settled that municipal police departments, sheriff's offices, and jails are not generally considered persons within the meaning of 42 U.S.C. § 1983 and thus not amenable to suit." *Ferrell v. Williams Cty. Sheriffs Office*, No. 4:14-CV-131, 2014 WL 6453601, at *2 (D.N.D. Nov. 4, 2014); *see also Ketchum v. City of W. Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (city police department not suable juridical entity because it is department or subdivision of city government); *Fehderau v. Omaha Police Dep't*, No. 8:18CV592, 2019 WL 4858303, at *2 (D. Neb. Oct. 2, 2019) ("Plaintiff cannot maintain a § 1983 action against the Omaha Police Department because it is not a distinct legal entity amenable to suit under § 1983."); *Meyer v. Lincoln Police Dep't*, 347 F. Supp. 2d 706, 706 (D. Neb. 2004) (city police department not subject to suit because it is agency

of the city, which is a political subdivision, and has no separate legal status under Nebraska law). Thus, OPD must be dismissed as a party to this action.

Plaintiff sues the OPD Officers in both their official and individual capacities, and her official-capacity claims are properly considered as being brought against the City of Omaha. However, "[t]o establish municipal liability, a plaintiff must first show that one of the municipality's officers violated her federal right." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007)). Here, Plaintiff simply alleges the OPD Officers documented certain incidents involving J.C., but she does not allege any facts suggesting how the Officers' documentation of these incidents violated her constitutional rights. As such, she fails to state a claim for relief against the OPD Officers in either their official or individual capacities.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's claims on behalf of her son, her claims for injunctive relief, and her § 1983 claims against Defendants the State of Nebraska, DHHS, Juvenile Probation, Judge Brown, Wilson, Strader, Wayne, and OPD must be dismissed. The remainder of Plaintiff's Complaint is also subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a plausible claim for relief against any of the Defendants. Upon consideration, the Court will dismiss this case without prejudice and without leave to amend as the Court concludes further amendment would be futile. *Horras v. Am. Cap. Strategies, Ltd.*, 729 F.3d 798, 804 (8th Cir. 2013) (district court may deny leave to amend when amendment would be futile).

IT IS THEREFORE ORDERED that:

1. This matter is dismissed without prejudice for failure to state a claim upon which relief may be granted.

2. The Court will enter a separate judgment.

3. Plaintiff's motions for temporary restraining order, Filing No. 3; Filing No. 7, are denied as moot.

Dated this 29th day of September, 2026.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge